Your Honor, the third case of the morning, call 214-0401 on behalf of the Medical Group, LLC and Kenneth Barrett v. BMO Harris Bank, N.A. On behalf of the Appellant, Ms. Lorena Arcenteva. On behalf of the Appellate, Mr. Steven Hyde-Sykes. Okay, Ms. Arcenteva. Since it ended with an A, I thought it was a feminine name. Is that correct? Yes, Russians and their names in an A. You may proceed. Your Honors, my name is Paulina Arcenteva and I represent the Appellants, Avanti Medical Group, LLC and Dr. Kenneth Barrett. Your Honors, there are three reasons why this Court should reverse the lower court's erroneous judgment and hold that the amended summary of terms and conditions is a credit agreement as defined by the Illinois Credit Agreements Act. First, the amended terms is signed by both BMO and Avanti. Second, the amended terms contains all the essential terms of a loan agreement, including interest rate, duration, and prepayment terms. And third, the amended terms sets forth in writing the terms and conditions on which BMO agreed to extend credit to Avanti. Can I stop you right there and ask you about your second point? You said there's mutual signatures on this document? I thought that the amended terms document was signed by Gable only. That is correct, Your Honor. However, the credit agreements under the Act are not limited to being a single document. So courts interpreting the credit agreement requirements follow the well-established principles that documents signed and unsigned between the same parties relating to the same subject matter executed in the course of the same transaction. And you have to go to that argument, but for purposes of the record, you'd have to concede that Barrett didn't sign it, correct? He did not sign the amended terms, yes. And that is the only document that sets forth any of the loan terms, is the amended terms, correct? Yes, however, that is not the only document governing the loan transaction. The term documents are also signed by both parties, but those only? Yes, Your Honor. They're generic? Actually, respectively, Your Honor, they directly relate to the loan agreement. Yes, but they're generic terms. They're terms governing the commercial account agreement that Avanti has. But they're standard. I guess we could say they're standard. They're not related to specifics of this transaction. The earlier ones were the standard ones that the bank requires, correct? Yes. They're pre-printed forms. Yes, but those are the terms that BMO uses for any loan transaction. Without those agreements, had they not been signed by both BMO and Avanti, neither party would be able to perform under the amended terms. Let's take a step back and look at this objectively. Sure. The party to be charged, as that phrase is used, to be held to the agreement if it's Barrett, he didn't sign it, correct? The second document. He did not sign what was termed the amended terms, correct? Yes. So, that being the case, if there was ever a suit and they wanted to enforce the agreement against him, couldn't he come in and say, I never signed this document. You can't hold me to this document. Your Honor, because Avanti and BMO both countersigned all the other documents, namely the global account agreement, the commercial account agreement, the security account agreement, the account of authorization forms, and all the authorization and tax forms that were needed as conditions precedent to the amended terms, Dr. Barrett would be... So, why didn't Dr. Barrett sign the amended terms? If he wanted to have a complete agreement and he was binding himself to this on both sides, why didn't he sign it? Your Honor, there's no reason that the amended terms, as the document itself, was not signed by Dr. Barrett. Does that lead to the inference that maybe he didn't want it signed? Quite the opposite, Your Honor. The closing was not until August 22nd through 26th of 2011. The inference, especially on a motion to dismiss, is always in favor of the plaintiff and it could be reasonably inferred that the parties meant to sign the amended terms at the closing. On August 19th, 2011, as the appellant alleged in their complaint, BMO actually wrote a letter to SuperValue stating that the closing date was changed to August 22nd through 26th, 2011. It expressly referred to the pending loan with Avanti and because SuperValue is actually expressly required under the amended terms to provide an agreement detailing its request for any future retail health clinics to be opened and at what address, after each subsequent draw on, after the $3.5 million on the credit facility that BMO is required to provide at closing. So this action is proceeding under Section 2 of the Credit Agreement Act, correct? Yes, Your Honor. Okay, and as you know, the old theory, this is a statute. It's a statutory action that's in derogation of the common law. So with regards to your stacking argument, why wouldn't this be strictly construed? This is a statute that says it has to inherit the signatures act. You don't have both signatures, nobody disputes that. So why couldn't he argue that this statute's in derogation of the common law, you can't stack it? Or let me ask you this, do you have a case that says under this specific act, stacking is permissible? It's applied here under this act before. Do you have a case that says that? Yes, Your Honor. Actually, all of the cases, even though they found that there were oral promises, and so it could not be enforced under, like you said, the express provisions of the act, they combine any agreements that were either a necessary part of the loan or necessary for both parties to perform. What case do you have that says that Section 2, you can stack agreements under a Section 2 action? Sure. R&B Capital versus North Shore Community Bank. In that case, there was an escrow agreement relating to the performance of the loan, by which the bank was required to make sure that the subcontractors were paid out. And when they weren't, the subcontractors sued the borrower. In that case, the court looked at the escrow agreement and found that it was a necessary part of performance under the loan agreement itself, and because of that, it combined those two together. Since the oral agreements related to that escrow agreement, it was an oral modification of the loan agreement. This was R&B Capital? Yes, Your Honor. I don't know that it exactly says that, does it? In that case, wasn't that a personal guarantee out of a loan that may be considered a credit agreement, if it's connected to a bona fide credit commitment? It's not exactly that point, is it? Your Honor, that was the case where it said that the act, by its language, does not limit the definition of credit to being a single document. And so it looked at this escrow agreement and stated that the process of paying for the subcontractors under this loan was a necessary part of the loan agreement, and so any promises related to that escrow were a part of the loan agreement itself. If this Court also looks at McLuhan v. Northwest Bank Corp. McLuhan, is that the M-C-A-L-O-N case you're talking about? Actually, let me take that back. More on point would be Bank One Springfield v. Rossetti. There, the bank extended credit under the agreement, and the borrower's friend guaranteed the loan. The borrower defaulted, and the only reason that the borrower said he got into the agreement is because the bank promised to watch the borrower like a hawk. The cases that you're talking about did not focus on Section 2's signature requirement. The discussion was you can look at several documents to form a credit agreement. This issue that's raised here is you have a document. The only document that supports the terms of the agreement is signed by Gable only. Right, but the basis, Your Honor, is that those... I understand your point, but if you had other signed documents by your client that reflected the terms of the agreement, you might have a point that these cases should be followed. Your Honor, all of the signed agreements were only signed because of the only transaction between BMO and Avanti. Without those agreements, neither BMO or Avanti would be able to perform under the amended terms. On its own, the amended terms does nothing but govern the actual process of what would happen. The interest rate on the loan would have to be repaid, the duration... But isn't that important? Isn't that important? I mean, how do you have an agreement that's enforceable if you don't have specific terms relevant to the specific transaction? You're saying when you go into a bank, you sign some preliminary agreement that talks about all the standard boilerplate language that applies to the transaction. The fact that nothing else is signed is okay. No, Your Honor. Respectfully... Well, it has to be your position because you acknowledge there is no signed amended agreement by your client. Your Honor, there's no signature on the amended terms, but the position is not that there's no signed loan agreement between the parties. Well, what is the loan agreement for? The original document that he signed, what is it for if it doesn't contain specific terms relative to the transaction? The amended term sets forth the conditions on which the loan would be based. But that was not signed. Right, but the other documents all... Leading up to that, those are preliminary... I understand your argument. They're preliminary documents leading up to this final agreement setting forth all the full terms of the loan. Correct? Right, those documents are the ones that enable the parties to actually perform under the law. They're moving forward. It's not solidified, but they're moving forward towards a final loan agreement. Correct? Exactly, Your Honor. Let me ask you this question to shift gears a little bit. I notice your complaint represents that certain documents are attached to the complaint, which in fact are not, specifically exhibits J and K, the letter to Group 1 Investments and the second letter to Edgington. Yes, Your Honor, and those were just clerical errors that they did not become attached, but those documents do not necessarily need to be attached to constitute the amended terms because they don't... We're not suing on the basis of those letters. We're suing on the basis of the amended terms and the countersigned documents, namely the commercial account agreement, the secured account agreement, the global management... You say you're suing on the amended terms? Yes, and all the... On the amended terms that your client didn't sign? Dr. Barrick, as President of Avanti, did sign the amended terms because he signed all the other contracts in his amendment. I mean that specific document. I understand your theory, but you're bootstrapping me. He didn't sign the amended terms document. You're saying that it's part and parcel of all of the documents, but the specific document you're suing on, he did not sign. Correct? Yes, but two or more unsigned documents under the law are... I understand your theory. And what's more important is that going to my second point is that the amended terms is sufficiently definite to be enforced. A contract is sufficiently definite to be enforced if all of its material terms are definite and certain for a court to be able to ascertain what the parties agree to. The material terms of a loan agreement are the interest rate or the basis for how interest will be calculated, the duration, and the mode and rate of prepayment. The lower court found that the credit, that the amended terms was not enforceable because it left certain materials, terms open, one of those being the interest rate and the other maturity. This finding is contrary to both the express language of the amended terms and contrary to the principles of contract law. First, there can be no debate that the amended terms contains maturity date and prepayment terms. On page A7 of the record, under the clause maturity, it states that the loan must be repaid at the latest two years from closing. Prepayments are allowed under the amended terms and are allowed without penalty unless BMO is paying interest at the LIBOR plus rate and then any prepayments that are made prior to the last day of the interest period would be subject to the usual and customary breakage costs. Second, the amended terms has a definite interest rate. A contract has a definite interest rate if it provides the basis for the way that interest will be calculated. On pages A7 through 8 of the record, the amended terms states that Avanti only has two options. It can either pay interest at the BMO-Harris base rate or at the LIBOR plus rate. And then the amended terms also provides how each of those rates will be calculated. For the BMO rate, it is the federal funds rate, the prime commercial rate, or the LIBOR plus rate. And for the LIBOR, it is the LIBOR rate. It also provides the base rate. It's BMO plus .75 percent. And for LIBOR, it's LIBOR plus 2.75 percent. It also states whether those interest rates are available upon default and it states whether those prepayments will be penalized under that interest rate. In Illinois, terms that are subject to a commercial practice are sufficiently definite. Let's take as an example the Seventh Circuit decision in Wygod v. Wells Fargo Bank. That case involved a breach of contract against a mortgagor for failing to extend a loan modification to the plaintiff under the Federal Home Affordable Mortgage Program, or HAM, if she qualified under the guidelines. The mortgagor argued- I mean, your time's up unless we have questions. I see that my time is up. I have a question. Yes, Your Honor. Is this like the old loan agreements back around the time of Sir Thomas Moore where the- Very recent authority, by the way. Actually, St. Thomas- The English Sir Thomas Moore? Yes. The tutor? Okay. Was this loan supposed to be paid off at the end of the term in one payment with accrued interest or was it supposed to be paid off periodically during the term? Your Honor, under the amended terms, prepayments at any time were allowable, but the full term of the loan had to be paid off under the language of the agreement at latest two years from the closing date. So, like my analogy, this loan, if your client so desired, would not have been payable and would not have been a breach of the agreement if he didn't make any payments whatsoever until the last day of the term of the loan plus the interest that was accrued. Unless BMO demanded payment earlier, which they were allowed to do under the amended terms. So the payment can be made at any time, but at most it had to be paid off in full. So if they made a demand, was the demand for payment in full or was it for a portion or percentage? Well, under the terms, each drop is submitted by a loan or a standby letter of credit and they can't exceed $2.5 million in the aggregate. So at that point, whenever the demand for payment was made, it would be whatever is outstanding at that time under those commercial letters plus interest. Thank you. Any other questions? Thank you, Your Honor. Thank you. You'll have an opportunity to make a rebuttal. Mr. Sipe, you may proceed. Thank you. Good morning, Your Honors. I'm Todd Sipe on behalf of the appellate BMO Harris Bank, N.A. From our point of view, the issue in this case is very simple and straightforward. The point is the appellants are unable to show an agreement that satisfies the requirements of the Illinois Credit Agreements Act. There was one preliminary document signed, right? There was one preliminary document signed, but it was not a final. It didn't satisfy. And we've asked a lot of questions about that. You can understand the concerns raised. But her argument is, and there is some valid authority for that, is that you can stack the documents together even though one of them was not signed, and putting them together, you result in an invalid enforceable agreement. So what's wrong with her theory, and tell us why it doesn't apply here. Well, there's a couple of issues with respect to the theory. I'll just say it first. The trial court actually did consider all these documents together, and that's on the record. They actually considered all the account documents and the summary of terms and conditions and considered the entire group together. And from our point, the issue of whether they're combined or not is kind of a moot point because you still don't satisfy the requirements. To address your question directly is that there are a couple of problems. One is that these account documents, none of them reference this loan. They are just standard documents for opening up an account. In fact, one of the documents was a – When you say they don't reference, do you mean they don't mention it at all, or are they devoid of anything that says that they're incorporated therein by reference? They don't mention they're devoid of any reference to this loan. They're very well documents that would be signed in connection with a loan, but there is no reference to this loan or any other particular loan. And specifically, one of the documents that would normally be signed in connection with a loan, the security account agreement, it has right in the text, this is in connection with this loan, and it's left blank. It's a blank document. It doesn't reference any loan. It's not a completed document. So none of these account documents – and by the way, I just want to correct. I think Harris – You're saying if a bear attempts to acquire a loan in the forest and he doesn't sign it or there's no reference that there is no loan? I'm saying that there's no reason to assume that these account agreements completed or had any specific relationship with this amended – these amended terms. Well, that's what I had asked her. She basically indicated it wasn't signed. It didn't completely specify what you would normally have. I mean, what I've been asking questions about is what would be the purpose of having amended terms if it didn't need to be signed in the first place? It would seem to be, you know, an exercise of utility. But what's lacking? Were there terms, interest rates? What was lacking from the first document that she says constitutes part of the agreement versus what you would have had in the amended terms? What's missing? Well, there's a lot missing in there, as we set out in our papers. The Illinois Credit Agreements Act requires something that is signed by both parties. It requires an express agreement or commitment to loan, and it requires that the relevant terms and conditions of the loan be set out. This summary of terms and conditions is lacking. It's a writing. I'll grant that. But it's lacking in all the other three requirements. Mr. Gabel did sign the amended terms, correct? Yes. On behalf of BMO? Yes. So what is lacking? Tell me specifically, what is lacking that should have been in there that was not in your document? Well, first, it's missing the signature of the plaintiff. Second, it doesn't contain any express commitment or agreement to lend. In fact, it says the exact opposite. It says that certain requirements still had to be met before a loan would be made. So a reference to some condition of proceedings that were never fulfilled. Correct. And important ones, like we have to agree to the security, the collateral. And there was never any such agreement? No. The agreement says it would be a standby letter of credit, and then it says, but the specifics of it, Harris has to agree to. There's no subsequent document, and certainly not in the account documents that don't even reference a loan, that are writing that show that Harris ever agreed to a collateral for this loan. So even if the suit is not barred by Section 2 of the Act, it's barred because of condition of proceedings, so performance was never satisfied. Correct. That's one of them, the security. The other one says the credit facility will be subject to final negotiation and execution of credit and security documents satisfactory to BMO and its counsel. That was not done. The agreement is talking about contemplating further actions and further conditions that were never satisfied. Exactly. It contemplates more documents, first of all, credit and security documents, and that BMO and its counsel have to agree on. There's no document out there reflecting that that condition was met. Now, going down to the final requirement, the relevant terms. Now, this document does have some of the terms. It sets out some of the framework for a loan, which I think is what the intent was, but it leaves out certain terms to be determined and resolved in the future, specifically one we already referenced, the security. The security is defined as a standby letter of credit that Harris has to approve. The details of that standby letter of credit, how much it is, who it's from, the duration of it, are all left open for future determination and approval. So there would be nothing to secure the loan? Is that what you're saying? There was nothing to secure the loan. There's no agreement on what would secure the loan other than it would be a standby letter of credit and that Harris had to approve. We talked about the duration or maturity term, and I think it was referenced it was two years. Well, that's not exactly what it says. What it says specifically is that this facility will be on a demand basis. However, it will have an underlying maturity date of 30 days prior to the maturity of the standby letter of credit secured in the facility, in any event, no longer than two years from closing. So two years is like a maximum period of time. But to anything less than two years, it's tied to whatever the duration is of the standby letter of credit, which we don't know what the duration of standby letter of credit is because the one hadn't been agreed upon yet when this document was put together. The interest rate, it actually sets forth two different options for an interest rate, but it doesn't say which one it would be. That would still need to be finalized. What does it say about the interest rate in the preliminary document? It says at the borrower's option, each loan under the resolver in turn will bear the interest rate under the following rates, and then it's quite detailed. It provides one option and then a second option. What's in the borrower's option? The doctor was the borrower, right? Yes. Does it give him the option to choose the interest rate? It does between these two options, but we have no evidence that which one he picked. That's the point. So we don't know what the loan interest would actually be because we don't have a document saying he picked A or B is my point. So, I mean, there are a lot of terms in here, and there's a framework for a loan, but key terms are still specifically left undetermined, and also specifically this loan, this document says it's not a commitment, that the document still had to be approved by Harris and its counsel. So taking this document on its own, which is the primary document we relied on, it clearly doesn't satisfy a credit agreement, and it's not a commitment, and this would protect both sides, right? Both sides would have pulled out at any time before the execution of the final document. That's reflected in all of the documents, correct? Correct. So if the borrower got a better deal from another bank, he could pull out because this document clearly says it's not final and that the bank still had to approve it. This could be held as a document, but they're alleging that they could hold BMO as a document. Excuse me? What you're saying in so many words is he could have defended and said he couldn't be held as a document because he never signed it, but they want BMO to be held as a document. Correct, correct. So this document is that we set out in some detail. It doesn't satisfy the requirements. I think they make an attempt to try to remedy these deficiencies by saying, hey, consider these account documents, and if I understand their argument, it is, well, because account documents were needed for a loan, therefore it must have been for this loan and it must have somehow triggered some requirement to make a loan. And on its face, it's a little bit peculiar that signing generic account documents all of a sudden would trigger an obligation to make a loan when it's not set forth. Now, she referenced in her oral argument certain case law holdings that she believes supported the position. Did you look at those cases? I looked at those cases. Do they apply here? I don't think they do apply. I'll just note overall they only cite two cases I saw that even had any relevance to the deal of contracts that were covered by the Act. That was the Arby Capital and this Roschetti case. And if I understand what happened in those cases, both those cases dismissed the claims, by the way. They're actually cases in our favor. I think what happened in both those cases is that there was a loan agreement and then there was an agreement that was related to the loan, like an escrow agreement or a guarantee. Put those documents together. That's what those cases stand for. The point is I don't think they're formation cases. There was a loan agreement and there was a related agreement, and then those related agreements were oral modifications or oral assurances were made on these related agreements. And what the court said is the escrow and the actual loan agreement, escrow agreement, are both credit agreements because they related to the same transaction. But in those cases, you had a credit. You had an agreement. There was no doubt you had an agreement, is my point. It wasn't about trying to piece together a signature here and a non-signature here and a term there. There was a loan agreement and then there was a related agreement. All these cases have a similar pattern, very similar to this, is that you have somebody saying, hey, you told me that you would make me a loan, or, yeah, you said you would modify this, or you promised me this, and they're never in writing and signed, and that's the problem in all these cases, and that's the problem we have here. Is it your contention that the two documents that you've referenced were both enforceable and they both had to be read in paramateria? The both document, the amended? I'm talking about the cases. Oh, the cases, yes. I think they were both enforceable agreements. I don't think that was even the issue in those cases. Well, they were both enforceable. The next question, then, is were they supposed to have been read or interpreted in paramateria? To read them, to reconcile them, and to attempt to give meaning to all the terms that are contained in the contract. I don't think those cases, I don't think those two particular cases involve that issue. They cite other cases that are non-credit agreements, cases where contracts were interpreted together. I think in these instances, there was a credit agreement and there was an escrow, and there was a modification of an escrow agreement or a guarantee that was separate, in a separate piece of paper than the actual loan. And the issue was, well, I'm claiming that you orally modified this agreement, and the issue is did the credit agreement bar consideration of that oral modification? And did the escrow agreement fall within the orbit of the credit? So what you seem to be saying in so many words is in the other cases, there was at least one enforceable agreement. And here you're saying the preliminary document in and of itself was not an enforceable agreement. Correct. Correct. In those two cases. It wasn't preliminary. It was all agreements weren't enforceable. All of the agreements. He said the preliminary agreement. You've been arguing that none of the agreements have been enforceable. Right. Here. Yeah. In here. Well, there's no credit agreement is my point. And this agreement is not an agreement at all as far as I can see. The account agreements related to opening an account, one of them was signed by Harris. The rest of them were not signed by Harris at all. So I'm not sure which ones of those were enforceable or not, but they didn't relate to a loan. They related to opening an account. And so the bottom line is, is that I'm just going to end it quickly because I think it's a very straightforward issue. We just don't have a mutually signed, finalized credit agreement here that consisted of the relevant terms and consisted of a commitment to lend. And that's what you need under the Credit Agreement Act. And the court, even though we've argued that the account documents shouldn't or there's no reason to tie them together, they considered every single document that the plaintiffs presided. The court said specifically on the record, I looked at all the documents and I don't see where BMO agreed to the security, final security. I don't see where there was a commitment or an agreement to lend. And on that basis, the court dismissed based on the Illinois Credit Agreement Act. And we believe it should be affirmed on that basis. Thank you. Thank you very much. Yes. I was going to say your name. You may proceed. Thank you, Your Honor. It's just three points on rebuttal. The first issue I want to address is I think just to clarify, the issue here is whether there's a credit agreement as defined by the act. There is a lot of confusion between whether that agreement has been breached and whether there's a credit agreement in the first place. That is the reason why the lower court's holding was erroneous, is that it confused the requirements for whether a breach of the amended terms occurred with whether a credit agreement arose in the first place. There was a lot of talk about the security documentation. The security documentation is just another condition that the loan to Avanti was subject to. And like Your Honor said, the act is in derogation of the law and so we have to enforce its expressed terms. A credit agreement is any agreement or commitment to lend money or extend credit in accordance with the relevant terms and conditions set forth. If Avanti did not provide the standby letter of credit, it would just have failed to meet a condition precedent to actually releasing the funds to Avanti. It has no bearing on whether a credit agreement arose subject to certain terms, and that is all that the language of the Credit Agreements Act requires. However, in this case, Avanti did meet that condition precedent of providing a standby letter of credit. As seen on page A7 of the record and stated by Appellee's Counsel, the loan to Avanti needed to be secured by a standby letter of credit. Avanti engaged East Trend Corporation to provide that standby letter of credit. And appellants alleged that BMO, Dr. Barrick, and East Trend met regarding the structure and disbursement of the loan. And then on August 3, 2011, East Trend executed the collateral summary promising to provide the standby letter of credit if BMO agreed to pay $6.3 million to Edgington Brothers. On August 25, BMO wrote a letter to Edgington Brothers stating that... Is this the letter that's not in the record that you didn't attach to the complaint? We did not attach it to the complaint. Okay, so why are you mentioning it if it's not in the record? Because, Your Honor, we alleged that the letter exists, and we alleged the terms of the letter. And again, we're not suing on the basis of the letter. And again, on a motion to dismiss, the proper procedure would have been to allow for leave to amend because all inferences are made in the favor of the plaintiff. And if the plaintiff alleges sufficient facts, it, if proven true, would meet the elements of the claims. So in this letter on August 25, 2011, BMO promised to pay Edgington Brothers the $6.3 million, expressly referenced the standby commercial letter of credit from East Trend Corporation, and the pending loan to Avanti. When you rely on a document, doesn't the Civil Practice Act, doesn't the pleading requirements require you to attach the documents to the pleading? And you keep mentioning this. Under Rule 2-606, if a document is merely supportive of the agreement or is proof of the agreement made, it does not need to be attached. It only needs to be attached if that is the agreement that is being sued on. And here we're suing on the amended terms and all the documents that comprise the entire loan transaction, which together, and with the signatures on them, constitute a single loan agreement. The, so accordingly, whatever discretion that BMO had to exercise, it did exercise. However, that goes beyond the requirements of the Credit Agreements Act, which just needs a writing setting forth the terms and conditions that that loan was subject to. And the amended terms more than meets that requirement. The Act requires that a signature by both parties be on that document. If you're looking at, and the court, the trial court said, I've looked at, I've examined all of the documents in combination. The various account documents specifically do not satisfy the requirements of the Act. He found that there was no agreement. Your Honor, the lower court found that there was no agreement based on the absence in its view of the material terms. Again, this court does not give any deference to the lower court's factual findings and reviews this case de novo. And the credit agreement in this case, like any other contract, is subject to the same contract law principles. The Act has its own requirements, but it doesn't change how, I see that my time is up. It is your time. Thank you. It does not change the requirements of any other contract that you are required to meet. And under those requirements, these documents and the signatures on them may be considered together as a single loan agreement. Thank you, Your Honors. Thank you. There's one more case on the call. We'll take a short recess.